1  STEPHEN YAGMAN
   475 Washington Boulevard
2  Venice Beach, California 90292-5287
   (310) 452-3200
3
   Presented on behalf of Plaintiff,
4  Stephen Yagman

FILED
2017 AUG 14 PM 1:25
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

ORIGINAL

LACV17 06022-MWF-PJWx

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| STEPHEN YAGMAN, | |
|---|---|
| Plaintiff, | |
| v. | COMPLAINT |
| NATASSIA KELLY, BILLA JOE GOLDICKY, CHELSEA JEFFERS, MARK T. BERTOLINI, KAREN S. LYNCH (ROHAN), ALLEN WISE, FIRST HEALTH LIFE & HEALTH INSURANCE COMPANY, AETNA, INC., AETNA LIFE INSURANCE COMPANY, COVENTRY HEALTH CARE, INC., and TEN UNKNOWN NAMED DEFENDANTS, 1-10, | JURY DEMAND |
| | CLASS ACTION ALLEGATIONS |
| | (8/14/17) |
| Defendants. | |

Plaintiff makes the following allegations on information and belief:

### JURISDICTION AND VENUE

1. Plaintiff asserts diversity of citizenship claims against defendants as defendants and plaintiff are citizens of different states, plaintiff of New York, and defendants, Pennsylvania, Connecticut, and Maryland, and therefore the court has jurisdiction pursuant to 28 U.S.C. § 1332, since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; plaintiff also asserts

1

his state law claims based on supplemental jurisdiction, under 28 U.S.C. § 1367; and jurisdiction also is based on 28 U.S.C. § 1331, as a federal civil RICO claim is asserted, pursuant to 18 U.S.C. § 1961, *et seq.*

2. Defendants did both general business and case-specific business and engaged in conduct directed at and in California, plaintiff has a residence in California, the matters that are the bases for this action occurred in Los Angeles County, and therefore venue lies in the United States District Court for the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

3. Plaintiff is STEPHEN YAGMAN ("Yagman" or "plaintiff"), and defendants are NATASSIA KELLY, BILLA JOE GOLDICKY, CHELSEA JEFFERS, MARK T. BERTOLINI, KAREN S. LYNCH (ROHAN), ALLEN WISE, all of whom, KELLY, GOLDICKY, JEFFERS, BERTOLINI, LYNCH (ROHAN), and WISE, are individuals who work for, are employed by, are agents of, and are part of defendants FIRST HEALTH LIFE & HEALTH INSURANCE COMPANY, AETNA, INC., AETNA LIFE INSURANCE COMPANY, COVENTRY HEALTH CARE, INC., and TEN UNKNOWN NAMED DEFENDANTS, 1-10, (hereinafter, collectively, "defendants"), who are persons and/or entities whose true names presently are unknown and who may have engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow, whose true names will be added as defendants when they are ascertained.

## ALLEGATIONS COMMON TO EACH COUNT

4. Each and every allegation set forth in each and every averment of this pleading hereby is incorporated by this reference in each and every other averment and allegation of this pleading.

5. Plaintiff and the company defendants entered into a written contract, whose terms are set forth in full in a contract of insurance that defendants possess, under whose terms the company, non-individual defendants agreed to insure plaintiff for prescription medications, beginning on January 1, 2017, and to pay claims for plaintiff's prescription medications, and the material terms of that contract are that (a) plaintiff pay monthly premiums and (b) defendants pay for plaintiff's prescription medications.

6. At the time of entry into the agreement, these defendants agreed to insure and to pay as set forth in the contract.

7. These defendants did not intend to insure Yagman and their material representation that they would insure Yagman were false and known to be false, defendants intended that Yagman rely on them, Yagman relied on them, based thereon timely paid defendants' monthly premiums, defendants, beginning on June 1, 2017, refused to pay for plaintiff's prescription medications, and thereby damaged Yagman, who was forced to pay for his own prescription medications.

8. These non-individual defendants' representations in this regard were false and misleading, and these defendants intended not to pay or to pay promptly for any of Yagman's prescription medications.

9. These defendants intended their representations to be false and misleading.

10. These defendants intended that Yagman rely on these defendants' representations.

11. Yagman relied on these defendants' representations.

12. In reliance on these defendants' representations, Yagman paid monthly premiums to these defendants.

13. All defendants failed and refused timely to pay Yagman's claims for prescription medications after May 31, 2017.

14. Specifically, beginning on April 14, 2017, and then on April 18, 2017, April 20, 2017, April 29, 2017, May 6, 2017, June 1, 2017, June 6, 2017, June 21, 2017, and June 26, 2017, the individual defendants, KELLY, GOLDICKY, JEFFERS, and UNKNOWN NAMED DEFENDANTS, by both United States mail and by telephone, refused to pay for plaintiff's prescription medications, threatened to terminate, terminated, and refused to re-instate plaintiff's prescription medication insurance overage, on behalf of the company defendants, and also refused to refund to plaintiff the premiums plaintiff had paid to the company defendants for the months of June, July, and August, 2017, and this was done pursuant to the policies, practices, procedures, and customs of the company defendants and those who managed and ran those companies, defendants BERTOLINI, LYNCH, and WISE, who ratified, acquiesced in, and condoned the other individual defendants' wrongful conduct.

15. Yagman was injured and damaged by all defendants' failures and refusals to pay for Yagman's prescription medications, and defendants still have failed to refund Yagman's June, July, and August premiums.

16. At the time that the non-individual defendants entered into the contract with Yagman, those defendants knew that their representations to insure and to pay claims to Yagman were false.

17. These non-individual defendants intended to induce Yagman to enter into the contract of insurance so that Yagman would pay the premium to these defendants.

18. Yagman reasonably and detrimentally relied on these defendants' representations that these defendants would insure Yagman's interests and indemnify Yagman. were Yagman to seek payment for his prescription medications.

19. Yagman was harmed both by his reliance on the company defendants' misrepresentations and by Yagman paying premiums to defendants.

20. When Yagman filed appeals from the termination of his insurance benefits, defendants made further misrepresentations that they timely would pay for Yagman's prescription medications, but then failed and refused to do so, and failed and refused to do so in a reasonably timely fashion, thus inducing Yagman not to file the instant action.

21. Having devised or intending to devise a scheme or artifice to defraud or for obtaining money by means of false or fraudulent pretenses, representations, or promises, all defendants transmitted or caused to be transmitted by means of telephone and United States mail, in interstate commerce, writings and words for the purpose of executing their scheme or artifice.

22. Plaintiff is ignorant of the names of the persons who made all of the above-listed transmissions.

23. The company defendants are parts of the same insurance group and/or company, and or subsidiaries of one another.

24. Plaintiff's state law claims are asserted as both diversity and supplemental claims.

25. Within the last 10 years, in at least 10 instances, and specifically in the case of the Aetna company defendants, those defendants engaged in fraudulent and RICO-predicate conduct by fraudulently, improperly, and wrongfully interpreting and applying a health benefits plan and refusing to pay benefits to, Elizabeth L., an insured from June 2011 to June 2012, and by engaging in interstate commerce to do so.

//
//
//

## COUNT 1

(Breach of Written Agreement)

26. By doing the things alleged hereinabove, the company defendants materially breached their written agreement with Yagman, Yagman was injured and damaged by these defendants' breaches, and Yagman is entitled to recover damages from defendants for breach of a written agreement.

## COUNT 2

(Fraudulent Breach of Written Agreement)

27. By doing the things alleged hereinabove, the company defendants materially breached their written agreement with Yagman, Yagman was injured and damaged by these defendants' breaches, and Yagman is entitled to recover damages from defendants for breach of a written agreement.

## COUNT 3

(Fraud)

28. By doing the things alleged hereinabove, all defendants committed fraud, both fraud in the factum and fraud in the treaty, by making material misrepresentations that were false, as set forth hereinabove, that the company defendants would insure Yagman, and that were Yagman to make a valid claim on his policy of insurance that that claim would be paid, they intended that Yagman would rely on those misrepresentations, Yagman justifiably relied on them, Yagman was harmed and damaged by his reliance, and defendants therefore are liable to Yagman for damages for fraud.

## COUNT 4

(Financial Abuse)

29. Yagman resides in California and was older than 65 years of age when he entered into the insurance agreement with the company defendants.

30. By doing things alleged in this complaint, defendants and each of them committed financial abuse against plaintiff by taking, secreting, appropriating, and retaining plaintiff's personal property, the money he paid for monthly premiums, for a wrongful use, and/or with intent to defraud, and defendants knew or should have known their conduct as alleged in this complaint was likely to be harmful to plaintiff.

30. By their conduct as alleged in this complaint, defendants deprived plaintiff of a property right.

## COUNT 5

(Unfair Business Practices)

31. By doing the things alleged hereinabove, defendants engaged in unfair business practices.

## COUNT 6

(Insurance Bad Faith)

32. By their conduct, defendants engaged in a scheme of insurance bad faith, by falsely agreeing to indemnify for the losses for which the policy of insurance purported to indemnify and then failing and refusing to indemnify for those losses or timely to indemnify for them.

33. By doing and failing to do each of the things set forth hereinabove, defendants each and all breached their duties of good faith and of fair dealing to plaintiff and thereby injured and damaged plaintiff.

(34.-40. Reserved.)

## COUNT 7

(Racketeer Influenced and Corrupt Organizations, RICO)

41. By doing the things alleged hereinabove, defendants thereby committed wire fraud and mail fraud, by using instrumentalities of interstate commerce to accomplish their crimes, and thereby are liable under civil RICO.

42. Each defendant, in its or his or her own right, and all defendants are together, collectively, as well as their employees, who work in and for each defendant company, both enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C. 1961(4), and therefore are a RICO enterprises, who pose a continuing danger of harm and who continue to harm plaintiff, who either must pay for his own prescriptions or go without his prescription medications.

43. As regards the dealings alleged in the instant action, each different company is, the individual defendants are, and the companies that are defendants together are, an enterprise(s), within the meaning of 18 U.S.C. § 1961(4).

44. Each defendant's activities affect interstate commerce.

45. Each defendant received income, directly and/or indirectly, by way of insurance premiums, salary, compensation, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, *etc.,* from the pattern of racketeering activity alleged herein and used that income in the acquisition of an interest in and/or operation of the enterprise, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

46. All defendants conducted and/or participated in said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

47. The pattern of racketeering activities included a continuous, and presently continuing, pattern and practice potentially involving activities, including any potential civil RICO predicates, set forth in the RICO predicate statutes, including mail fraud, wire fraud, fraudulent concealment, fraud, and potentially obstruction of justice, and defendants' defense of the instant action will constitute a continuation and a part of their RICO schemes.

48. On information and belief, the enterprises' activities have occurred on more than one, and on many occasions, over at least the past 10 years, and have been done on numerous occasions and constitute at least three separate acts, not including the acts included as part of the defense of the instant action. Plaintiff will need discovery from defendants in order to determine on how many occasions over the past 10 years defendants have engaged in RICO predicates.

49. The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, and obstruction of justice, and pose a threat of continued criminal activity, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by their common characteristics, they are not isolated events, each and all if them constitute a continuing pattern of racketeering activity, and they constitute a long term threat of continuing racketeering activity.

50. These wrongful acts over a period of years and the bad acts alleged hereinabove enabled defendants to acquire and maintain, both directly and indirectly, interests in and control of the racketeering enterprises in which they engages.

51. The activities led to defendants' control and acquisition over the enterprises and resulted in the injuries to plaintiff, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

52. By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial employees and/or officers of defendants engaged in and condoned racketeering activities, and perhaps their attorneys in the instant action, and when the names of the managerial and non-managerial persons, some of which presently are

Unknown Named Defendants are obtained, the names of those persons will be added as defendants.

53. The willful and/or negligent mismanagement of the enterprises, with knowledge by defendants charged with management and potentially other defendants that they were and continue to be operated as a RICO enterprises, directly caused the harm to plaintiff, as alleged herein.

54. The acquisition of control of the enterprises by its participants who engaged in RICO predicate acts harmed plaintiff.

55. The enterprises are RICO enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

56. Plaintiff was harmed in that his property, to wit, his money and money in which he had an interest, was subjected to, affected by, and its value affected negatively by defendants' wrongful conduct, including extortion, fraud, wire fraud, mail fraud, deception, and obstruction of justice.

57. Both directly and indirectly, defendants, in the acts and instances alleged herein, and others, have conducted the RICO enterprises' affairs and have, as a matter of fact, participated in the operation and *de facto* management of the RICO enterprises.

58. By the conduct alleged herein, each defendant participated in the operation and management of the RICO enterprises himself and/or itself, or herself, and played some part in directing their affairs.

59. Plaintiff was injured in his property by reason of the conduct against him, as set forth hereinabove.

60. Plaintiff has suffered a material diminution in the value of his property, to wit, his money or money in which he had an interest, and also his credit was harmed.

61. Defendants unlawfully engaged in the racketeering activities set forth in the preceding averments and, on information and belief, on other occasions during the past 10 years, through a pattern of racketeering activity, and acquired, directly and indirectly, control of the enterprises, including, but not limited to the company defendants writing and issuing policies of insurance.

62. Defendants and others, who either are or have been employed by or who are associated with the racketeering enterprises, have conducted those enterprises through a pattern of racketeering activity, as set forth hereinabove.

63. Through a pattern of racketeering activities, as set forth hereinabove, defendants acquired and/or maintained, directly and/or indirectly, interests in and/or control of the RICO enterprises and their activities by, among other things, their own aggrandizement that flows therefrom.

64. By virtue of the allegations set forth hereinabove, some defendants were or are employed by, all defendants were or are associated with, and all defendants participated in, directly and/or indirectly, the RICO enterprises.

65. Defendants unlawfully conspired with others to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, on information and belief, continued to do so with the aid and assistance of co-conspirators

66. Plaintiff was injured in his property by reason thereof, and plaintiff is entitled to damages, to be trebled.

67. The wrongful policies and practices of defendants relating to the solicitation, sale, and processing of policies of insurance include, but are not limited to, the deliberate failure to make honest and truthful disclosures and of

making material misrepresentations, and have been formulated and implemented by defendants, both singly and jointly.

68. Defendants' actions involve thousands of consumers and constitute a pattern of racketeering activity and the predicate acts of wire fraud and mail fraud, in violation of 18 U.S.C. § 1343.

(69-99. Reserved.)

## CLASS ACTION ALLEGATIONS

100. Plaintiff is a member of the discrete class of persons, whose defining characteristic is that its members were insureds under agreements of insurance with the company defendants, to insure for prescription medications and whose claims were not paid, or were not paid in full, or were not timely paid, or whose insurance coverage improperly was terminated, and whose prescription medications were not paid for by defendant companies.

101. This class contains at least 100 members, the class is so numerous so that joinder of all members is impracticable, and plaintiff will need discovery from defendant companies to ascertain the entire number of class members whose insurance was cancelled.

102. Because only defendants know the names of all of the members of class and defendants are the only persons who have information sufficient to identify all the members of class it is impracticable to join all the members of the class in this action.

103. There are only common questions of fact and law with respect to all class members, which are whether they are insureds, whether they made claims, and whether their claims were not paid, were not paid in full, were not timely paid, or whose insurance coverage was cancelled.

104. The claim made by the representative party, plaintiff, is typical of the claims of each class member.

105. The representative of the class, plaintiff, fairly, vigorously, and zealously will represent and adequately protect the interests of all class members.

106. Prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the class, and defendants have acted and will continue to act on grounds generally applicable to every class member, and the class questions not only predominate but are the only questions that exist.

107. Therefore, this action is maintainable under F.R. Civ. P. Rule 23(a), & (b)(1)(A), (B)(1) and (3).

108. The nature of the notice to be provided to class members should be as follows: defendants should be required to identify all insureds whose claims were denied, not paid in full, or not timely paid, or whose insurance contracts were cancelled due to defendants contending premiums had not timely been paid, and to provide a suitable notice to all class members.

**WHEREFORE**, plaintiff requests relief against each defendant as follows:

1. General damages, including damages for emotional upset, to be determined in a sum exceeding $75,000.00, exclusive of interest and costs;

2. Punitive damages in a sum to be determined by a jury, and as a percentage of the net worth and yearly profits of defendant companies, in a sum sufficient to deter future misconduct, and not less than $1,000,000.00;

3. The trebling of all damages for the RICO violations;

4. Costs of suit;

5. Attorneys' fees;

7. Interest;

8. Injunctive relief that defendants properly pay claims that are valid,

not refuse to pay claims that are valid, not to engage unfair claims practices, and to reinstate plaintiff's insurance coverage; and,

9. Such other relief as is just and proper.

### JURY DEMAND

Plaintiff demands trial by jury of all issues.

*/s/ Stephen Yagman*
STEPHEN YAGMAN