STEPHEN YAGMAN
475 Washington Boulevard
Venice Beach, California 90292-5287
(310) 452-3200

Presented on behalf of Plaintiff,
Stephen Yagman



 **ORIGINAL**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| STEPHEN YAGMAN,<br><br>Plaintiff,<br><br>v.<br><br>NATASSIA KELLY, BILLIE JOE GLABICKI , CHELSEA JEFFERS, MARK T. BERTOLINI, KAREN S. LYNCH (ROHAN), FIRST HEALTH LIFE & HEALTH INSURANCE COMPANY, AETNA, INC., AETNA LIFE INSURANCE COMPANY, COVENTRY HEALTH CARE, INC., and TEN UNKNOWN NAMED DEFENDANTS, 1-10,<br><br>Defendants. | 2:17-cv-06022-MWF(PJWx)<br><br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY DEMAND**<br><br>**CLASS ACTION ALLEGATIONS**<br><br>(11/09/17) |

Plaintiff makes the following allegations on information and belief:

## JURISDICTION AND VENUE

1.  Plaintiff asserts diversity of citizenship claims against all defendants, as defendants and plaintiff are citizens of different states, plaintiff of New York, and defendants of states of the United States other than New York, and therefore the court has jurisdiction pursuant to 28 U.S.C. § 1332, since the matter in controversy

1

exceeds the sum or value of $75,000, exclusive of interest and costs; plaintiff also asserts his state law claims based on supplemental jurisdiction, under 28 U.S.C. § 1367; and, jurisdiction also is based on 28 U.S.C. § 1331, as federal civil RICO claims are asserted, pursuant to 18 U.S.C. § 1961, *et seq.*

2. All defendants did both general business and case-specific business directed at both plaintiff and the State of California, as more specifically alleged hereinbelow, plaintiff has a residence in California, the matters that are the bases for this action occurred in Los Angeles County, and therefore venue lies in the United States District Court for the Central District of California and in its Western Division, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

3. Plaintiff  is STEPHEN YAGMAN ("Yagman" or "plaintiff"), and defendants are NATASSIA KELLY, BILLIE JOE GLABICKY, CHELSEA JEFFERS, MARK T. BERTOLINI, KAREN S. LYNCH (ROHAN), all of whom, KELLY, GLABICKY, JEFFERS, BERTOLINI, and LYNCH (ROHAN), are individuals who work for, are employed by, are agents of, and are business parts of defendants FIRST HEALTH LIFE & HEALTH INSURANCE COMPANY, AETNA, INC., AETNA LIFE INSURANCE COMPANY, COVENTRY HEALTH CARE, INC., and TEN UNKNOWN NAMED DEFENDANTS, 1-10, (hereinafter, collectively, sometimes "defendants"), who are persons and/or entities whose true names presently are  unknown and who may have engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow, whose true names will be added as defendants when they are ascertained.  Unless otherwise stated, "defendants" refers to all defendants.

## ALLEGATIONS COMMON TO EACH COUNT

4.  Each and every allegation set forth in each and every averment of this pleading hereby is incorporated by this reference in each and every other averment and allegation of this pleading.

5.  Plaintiff and the company defendants entered into a written contract, or a "plan," as defendants call it, whose terms are set forth in full in a contract of insurance or "plan" that defendants possess, which defendants never provided to plaintiff and which plaintiff does not possess, under whose material terms the company, non-individual defendants agreed to insure plaintiff for prescription medications, beginning on January 1, 2017, and to pay for plaintiff's prescription medications, and the material terms of that contract or "plan," insofar as this action are concerned, are that (a) plaintiff agreed to pay monthly premiums of $42.30 and (b) the company defendants agreed pay for plaintiff's prescription medications that were listed, as covered on defendants' formulary, a copy of which defendants did not provide to plaintiff.  The medications were to be whichever medications were prescribed for plaintiff, prescriptions for which plaintiff submitted to pharmacies, and which pharmacies dispensed.  At the time the contract/plan began, it was not known which medications would be prescribed.

6.  At the time of entry into the agreement/plan, these defendants agreed to insure and to pay for prescription medications, as set forth in the contract/plan, as set forth in averment 5.

7. These company defendants did not intend to insure Yagman, and misrepresented that they would insure Yagman, and their material representation that they would insure Yagman was false, and known to be false at the time it was made, these company defendants intended that Yagman rely on their representations, Yagman relied on them, and based thereon Yagman always timely paid defendants' monthly premiums, but beginning on June 1, 2017, all defendants refused to pay for plaintiff's prescription medications, and thereby defrauded

Yagman, breached the contract/plan, damaged Yagman, who was forced to pay for his own prescription medications, and from June 1, 2017 until October 23, 2017, sometimes having to go without the medications.

8. In April and May, 2017, all defendants falsely and fraudulently communicated to Yagman by USPS mail that he had failed timely to pay his premiums and that if he would pay them by May 31, 2017, all defendants would continue his prescription medication coverage.  These representations were false when they were made and were known to be false when they were made, defendants intended that Yagman rely on them, and Yagman reasonably did rely on them, and timely paid the premiums.

9. These defendants knew and intended that their representations to be false and misleading.

10. These defendants intended that Yagman rely on these defendants' knowingly false representations.

11. Yagman reasonably relied on these defendants' representations.

12. In reliance on these defendants' representations, Yagman on May 9, 2017 paid monthly premiums for the months of March, April, and May, 2017, in the total sum of $126.90, to these defendants, but defendants then lied and contended that these premiums had not timely, by May 31, 2017, been paid .

13. All defendants failed and refused timely to pay Yagman's claims for prescription medications after May 31, 2017, and until October 23, 2017.

14. More pecifically, beginning on April 14, 2017, and then on April 18, 2017, April 20, 2017, April 29, 2017, May 6, 2017, June 1, 2017, June 6, 2017, June 21, 2017, and June 26, 2017, the individual defendants, KELLY, GLABICKY, JEFFERS, and UNKNOWN NAMED DEFENDANTS, by both United States mail and by telephone, refused Yagman's repeated requests to pay for plaintiff's prescription medications, threatened to terminate, terminated, and

refused to re-instate plaintiff's prescription medication insurance overage, all on behalf of all of the company defendants, and also refused, and continue to refuse, to refund to plaintiff the premiums plaintiff had paid to the company defendants on May 25, 2017, for the months of June, July, and August, 2017, and all of these things were done pursuant to the policies, practices, procedures, and customs of the company defendants, and those who managed and ran those companies, defendants BERTOLINI and LYNCH, who drafted those policies, *etc.*, and who ratified, acquiesced in, and condoned the other individual defendants' wrongful conduct.

15. Yagman was injured and damaged by all defendants' failures and refusals to pay for Yagman's prescription medications, and defendants fraudulently obtained and then retained and thereby stole Yagman's June, July, and August, 2017 premiums, in the sum of $126.90.

16. At the time that the non-individual defendants entered into the contract/plan with Yagman, those defendants knew that their representations to insure and to pay claims to Yagman were false, and were running a bad faith insurance scam.

17. These non-individual defendants intended to induce Yagman to enter into the contract/plan of insurance, so that Yagman would pay the premiums to these defendants, but then defendants would not pay for Yagman's prescription medications.

18. Yagman reasonably and detrimentally relied on these defendants' representations that these defendants would insure Yagman's prescription medication interests and needs and indemnify Yagman, were Yagman to submit to his pharmacy prescriptions for his medications.

19. Yagman was harmed both by his reliance on the defendants' misrepresentations, by Yagman paying premiums to defendants, by defendants

getting and keeping Yagman's premiums, and by defendants not paying for the medications.

20. When Yagman filed appeals from the termination of his insurance benefits, *see* aver. 14, *supra*, all defendants made further misrepresentations that defendants on demand and timely would pay for Yagman's prescription medications, but then failed and refused to do so, thus inducing Yagman not to file the instant action, because filing the instant action was the only recourse Yagman had to gain reinstatement of his insurance/plan, which defendants then reinstated on or about October 17 or October 23, 2017.

21. Having devised or intending to devise a scheme or artifice to defraud, or for obtaining money by means of false or fraudulent pretenses, representations, or promises, all defendants transmitted or caused to be transmitted by means of interstate telephone services and United States mail, in interstate commerce, *see* aver. 14, *supra*, writings and words for the purpose of executing their scheme or artifice, and accomplished their wrongful purposes.

22. Plaintiff is ignorant of the names of the persons who made all of the above-listed transmissions.

23. The company defendants are parts of the same insurance group and/or company, and/or are subsidiaries of one another.

24. Plaintiff's state law claims are asserted as both diversity and supplemental claims.

25. Within the last 10 years, in at least 10 instances, and specifically in the case of the Aetna company defendants, all defendants engaged in fraudulent and RICO-predicate conduct by fraudulently, improperly, and wrongfully interpreting and applying a health benefits plan and refusing to pay benefits to, and specifically to the Aetna companies, to Elizabeth L., an insured from June 2011 to June 2012, and by engaging in interstate commerce to accomplish this.

26. All of all defendants' actions as alleged herein were oppressive, malicious, fraudulent, and in violation of plaintiff's legal rights, and were done with the knowledge and intent to cause injury to plaintiff.

27-125. Reserved.

## COUNT 1

### (Breach of Contract)

126. By doing the things set forth hereinabove, the company defendants, FIRST HEALTH LIFE & HEALTH INSURANCE COMPANY, AETNA, INC., AETNA LIFE INSURANCE COMPANY, COVENTRY HEALTH CARE, INC., materially breached their agreement/plan with Yagman, Yagman was injured and damaged by these company defendants' breaches, and Yagman is entitled to recover damages from defendants for breach of the agreement it calls "First Health Part D Value Plus (PDP) plan." There is no contract/plan to attach, since defendants did not provide any written plan to plaintiff.

127. The individual defendants, NATASSIA KELLY, BILLIE JOE GLABICKI , CHELSEA JEFFERS, on behalf of the company defendants, effectuated the breaches, which the company defendants then ratified.

127. The material contract terms were that Yagman must pay premiums each month and in consideration of Yagman's payment of the premiums, when Yagman obtained prescription medication from a pharmacy, the company defendants would pay for those prescription medications.

128. The premiums were to be paid by the first of each calendar month.

129. The medications were to be paid for by these defendants upon the dispensing of the medications.

130. Premiums were not deemed not paid until the tenth of each calendar month.

131. Defendants did not provide any copy of the contract/plan to plaintiff.

132-226. Reserved.

//

//

//

## COUNT 2

### (Fraudulent Breach of Written Agreement)

227.  By doing the things alleged hereinabove, the company defendants materially breached their written agreement with Yagman, Yagman was injured and damaged by these defendants' breaches, and Yagman is entitled to recover damages from defendants for breach of a written agreement.

## COUNT 3

### (Fraud)

228.  By doing the things alleged hereinabove, all defendants committed fraud, both fraud in the factum and fraud in the treaty, by making material misrepresentations that were false, as set forth hereinabove, that the company defendants would insure Yagman, and that were Yagman to make a valid claim on his policy of insurance that that claim would be paid, they intended that Yagman would rely on those misrepresentations, Yagman justifiably relied on them, Yagman was harmed and damaged by his reliance, and defendants therefore are liable to Yagman for damages for fraud.

229. The who, when, what, and where, statements, and falsity of the statements that constitute the frauds are as follows:

230. The company defendants, beginning on or about January 1, 2017, and continuing through on or about October 17 or October 23, 2017, communicated to Yagman, through Yagman's insurance broker, Bel Air Insurance Services, Inc., and the broker, Barry Sikov, in Los Angeles, California, that the company defendants would insure Yagman to pay for his prescription medications, provided

that Yagman would pay monthly premiums, but the representation that the company defendants would insure Yagman was false, because the company defendants did not intend to insure Yagman, and instead intended to defraud Yagman by collecting premiums from him and then not paying for his prescription medications.

231. The company defendants and the individually-named defendants, NATASSIA KELLY, BILLIE JOE GLABICKI , CHELSEA JEFFERS, beginning on or about April 14, 2017, and then on April 18, 2017, April 20, 2017, April 29, 2017, May 6, 2017, June 1, 2017, June 6, 2017, June 21, 2017, and June 26, 2017, communicated to Yagman, directly, both by telephone and USPS mail, and through Yagman's insurance broker, Bel Air Insurance Services, Inc., in Los Angeles, and the broker, Barry Sikov, California, that the company defendants would continue to insure Yagman and to pay for his prescription medications, provided that Yagman would pay defendants $126.90 by May 31, 2017, but the representation that the company defendants would insure Yagman were he to pay this sum by May 31, 2017 was false, because the company defendants and these individually-named defendants did not intend to insure Yagman were he to make this payment, and instead intended to defraud Yagman by collecting this payment, and then not paying for his prescription medications.

232. Plaintiff justifiably relied on the representations, which were false and known to be false when they were made, that were he to pay by May 31, 2017, his insurance coverage would continue and would not be terminated.

233. Plaintiff paid the $126.90 before May 31, 2017, but his coverage was terminated effective June 1, 2017, thereby damaging plaintiff.

234. Defendants BERTOLINI and LYNCH formulated the way in which these frauds would be executed and then ratified these frauds.

235. After this action was filed, defense counsel, RICHARD DOREN, TIMOTHY LOOSE, MICHAEL HOLECEK, and GIBSON, DUNN & CRUTCHER, assisted in continuing the maintenance of these frauds and conspired with all defendants to continue to deprive plaintiff of his insurance coverage and used both telephone services and USPS communications to accomplish this.

## COUNT 4

### (Financial (Elder) Abuse)

236. Yagman resides in California and was older than 65 years of age when he entered into the insurance agreement with the company defendants, and all defendants at all times knew that plaintiff was over 65 years of age, since they were provided that information by plaintiff's insurance broker and since eligibility for Medicare Part D prescription medication coverage is available only to persons who are at least 65 years of age.

237. By doing things alleged in this complaint, defendants intended to defraud plaintiff and defendants engaged in wrongful conduct, and each of them committed financial abuse against plaintiff by seeking, taking, secreting, appropriating, and retaining plaintiff's personal property, the money he paid for monthly premiums, for a wrongful use, and/or with intent to defraud, and defendants knew or should have known their conduct as alleged in this complaint was likely to be harmful to plaintiff.

238. By their conduct as alleged in this complaint, defendants wrongfully deprived plaintiff of property rights to both plaintiff's money and his contract rights to insurance.

## COUNT 5

### (Unfair Business Practices)

239. By doing the things alleged hereinabove, defendants engaged in unfair business practices.

240. It was unfair for the company defendants to promise to insure Yagman and then not to provide insurance coverage.

241. It was unfair for defendants NATASSIA KELLY, BILLIE JOE GLABICKI, CHELSEA JEFFERS, beginning on or about April 14, 2017, and then on April 18, 2017, April 20, 2017, April 29, 2017, May 6, 2017, June 1, 2017, June 6, 2017, June 21, 2017, and June 26, 2017, to communicate with Yagman, that the insurance companies would continue to insure Yagman, and to pay for his prescription medications, provided that Yagman would pay defendants $126.90 by May 31, 2017, because representation that the company defendants would insure Yagman were he to pay this sum by May 31, 2017 was false, because the company defendants and these individually-named defendants did not intend to insure Yagman were he to make this payment, and instead intended to defraud Yagman by collecting this payment, and then not paying for his prescription medications.

## COUNT 6

### (Insurance Bad Faith)

242. By their conduct, all defendants engaged in a scheme of insurance bad faith, by falsely agreeing to indemnify for the losses for which the policy of insurance/plan purported to indemnify and then failing and refusing to indemnify for those losses or timely to indemnify for them.

243. By their conduct in falsely representing to Yagman that were he to pay defendants $126.90 by May 31, 2017 his coverage would not be terminated, all defendants engaged in a scheme of insurance bad faith, by falsely stating they would continue to indemnify for the losses for which the policy of insurance/plan purported to indemnify, and then failing and refusing to indemnify for those losses or timely to indemnify for them.

244. All defendants deprived plaintiff of his contract/plan benefits by canceling his coverage.

245. All defendants' conduct as alleged hereinabove was unreasonable because all defendants intentionally failed to pay for prescription for which they were contractually obligated to pay, this was not an "honest mistake" or "bad judgment," but was a continuing fraud, *see supra*, assisted by defendants' counsel in this action, and defendants' actions were conscious and deliberate acts which unfairly frustrated the agreed, common purposes of the contract/plan and of plaintiff, and which disappointed the plaintiff's reasonable expectations. Defendants' conduct was not a simple coverage dispute.

246. By doing and failing to do each of the things set forth hereinabove, defendants each and all breached their duties of good faith and of fair dealing to plaintiff and thereby injured and damaged plaintiff.

247-240. Reserved.

## COUNT 7

(Racketeer Influenced and Corrupt Organizations, RICO)

241. By doing the things alleged hereinabove, defendants thereby committed wire fraud and mail fraud, by using instrumentalities of interstate commerce to accomplish their crimes, and thereby are liable under civil RICO.

242. Each defendant, in its or his or her own right, and all defendants are together, collectively, as well as their employees, who work in and for each defendant company, both enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C. 1961(4), and therefore are a RICO enterprises, who pose a continuing danger of harm and who continue to harm plaintiff and to other policy holders, who was forced both to pay for his own prescriptions and go without his prescription medications.  Each defendant engaged in at least two predicate acts, as set forth hereinabove, and as specifically alleged in averment 14.  Defendants'

12

conduct as alleged herein went far beyond the regular affairs of a corporation and its employees and officers because it could not, as a matter of law, be within the regular affairs to engage in chronic and systemic fraud. *See supra*. It was not defendants' primary business activity to engage in frauds or elder abuse.

243. As regards the dealings alleged in the instant action, each different company is, the individual defendants are, and the companies that are defendants together are, an enterprise(s), within the meaning of 18 U.S.C. § 1961(4).

244. Each defendant's activities affect interstate commerce.

245. Each defendant received income, directly and/or indirectly, by way of insurance premiums, salary, compensation, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, *etc.,* from the pattern of racketeering activity alleged herein and used that income in the acquisition of an interest in and/or operation of the enterprise, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

246. All defendants conducted and/or participated in said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

247. The pattern of racketeering activities included a continuous, and presently continuing, pattern and practice potentially involving activities, including any potential civil RICO predicates, set forth in the RICO predicate statutes, including mail fraud, wire fraud, fraudulent concealment, fraud, and potentially obstruction of justice, and defendants' defense of the instant action will constitute a continuation and a part of their RICO schemes.

248. On information and belief, the enterprises' activities have occurred on more than one, and on many occasions, over at least the past 10 years, and have been done on numerous occasions and constitute at least three separate acts, not

including the acts included as part of the defense of the instant action. Plaintiff will need discovery from defendants in order to determine on how many occasions over the past 10 years defendants have engaged in RICO predicates.

249. The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, and obstruction of justice, and pose a threat of continued criminal activity, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by their common characteristics, they are not isolated events, each and all if them constitute a continuing pattern of racketeering activity, and they constitute a long term threat of continuing racketeering activity.

250. These wrongful acts over a period of years and the bad acts alleged hereinabove enabled defendants to acquire and maintain, both directly and indirectly, interests in and control of the racketeering enterprises in which they engages.

251. The activities led to defendants' control and acquisition over the enterprises and resulted in the injuries to plaintiff, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

252. By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial employees and/or officers of defendants engaged in and condoned racketeering activities, and perhaps their attorneys in the instant action, and when the names of the managerial and non-managerial persons, some of which presently are Unknown Named Defendants are obtained, the names of those persons will be added as defendants.

253. The willful and/or negligent mismanagement of the enterprises, with knowledge by defendants charged with management and potentially other defendants that they were and continue to be operated as a RICO enterprises, directly caused the harm to plaintiff, as alleged herein.

254. The acquisition of control of the enterprises by its participants who engaged in RICO predicate acts harmed plaintiff.

255. The enterprises are RICO enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

256.  Plaintiff was harmed in that his property, to wit, his money and money in which he had an interest, was subjected to, affected by, and its value affected negatively by defendants' wrongful conduct, including extortion, fraud, wire fraud, mail fraud, deception, and obstruction of justice.

257. Both directly and indirectly, defendants, in the acts and instances alleged herein, and others, have conducted the RICO enterprises' affairs and have, as a matter of fact, participated in the operation and *de facto* management of the RICO enterprises.

258. By the conduct alleged herein, each defendant participated in the operation and management of the RICO enterprises himself and/or itself, or herself, and played some part in directing their affairs.

259. Specifically, defendants NATASSIA KELLY, BILLIE JOE GLABICKI, CHELSEA JEFFERS intentionally twice defrauded plaintiff out of $126.90, and also conspired to terminate and did terminate his insurance coverage, and they are liable under RICO for their conduct in this regard.

260. By their conduct, all defendants engaged in a scheme of insurance bad faith, by falsely agreeing to indemnify for the losses for which the policy of insurance/plan purported to indemnify and then failing and refusing to indemnify for those losses or timely to indemnify for them.  Both the individual defendants and the company defendants are liable for the individuals' wrongful conduct.

260. Plaintiff was injured in his property by reason of the conduct against him, as set forth hereinabove.

261. Plaintiff has suffered a material diminution in the value of his property, to wit, his money or money in which he had an interest, and also his credit was harmed.

262. All defendants unlawfully engaged in the racketeering activities set forth in the preceding averments and, on information and belief, on other occasions during the past 10 years, through a pattern of racketeering activity, and acquired, directly and indirectly, control of the enterprises, including, but not limited to the company defendants writing and issuing policies of insurance.

263. Defendants and others, who either are or have been employed by or who are associated with the racketeering enterprises, including, but not limited to, RICHARD DOREN, TIMOTHY LOOSE, MICHAEL HOLECEK, and GIBSON, DUNN & CRUTCHER, have conducted and assisted to conduct those enterprises through a pattern of racketeering activity, as set forth hereinabove. *See also* criminal investigation recently opened by United States Attorney for the Southern District of New York into, among others, GIBSON, DUNN & CRUTCHER and some of its lawyers, concerning transactions of Harvey Weinstein involving $600,000.00 raised at the AIDS charity, amfAR auction, into whether fraud occurred, in which GIBSON, DUNN & CRUTCHER and some of its lawyers apparently provided an opinion letter that the suspected transactions were legitimate and lawful, and vouched for their lawfulness, even though the New

York State Attorney General had found in September, 2017 that alleged charitable transactions "resulted in [prohibited] benefits to private interests."  Prosecutors have subpoenaed records from GIBSON, DUNN & CRUTCHER and some of its lawyers.

264. Through a pattern of racketeering activities, as set forth hereinabove, defendants acquired and/or maintained, directly and/or indirectly, interests in and/or control of the RICO enterprises and their activities by, among other things, their own aggrandizement that flows therefrom.

265. By virtue of the allegations set forth hereinabove, some defendants were or are employed by, all defendants were or are associated with, and all defendants participated in, directly and/or indirectly, the RICO enterprises.

266. Defendants unlawfully conspired with others to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, on information and belief, continued to do so with the aid and assistance of co-conspirators

267. Plaintiff was injured in his property by reason thereof, and plaintiff is entitled to damages, to be trebled.

268. The wrongful policies and practices of defendants relating to the solicitation, sale, and processing of policies of insurance include, but are not limited to, the deliberate failure to make honest and truthful disclosures and of making material misrepresentations, and have been formulated and implemented by all defendants, both singly and jointly.

269. All defendants' actions involve thousands of consumers and constitute a pattern of racketeering activity and the predicate acts of wire fraud and mail fraud, in violation of 18 U.S.C. § 1343.

270-299. Reserved.

## CLASS ACTION ALLEGATIONS

300. Plaintiff is a member of the discrete class of persons, whose defining characteristic is that its members were insureds under agreements of insurance/plans with the company defendants, to insure for prescription medications and whose claims were not paid, or were not paid in full, or were not timely paid, or whose insurance coverage improperly was terminated, and whose prescription medications were not paid for by defendant companies.

301. This class contains at least 100 members, the class is so numerous so that joinder of all members is impracticable, and plaintiff will need discovery from defendant companies to ascertain the entire number of class members whose insurance was cancelled.

302. Because only defendants know the names of all of the members of class and defendants are the only persons who have information sufficient to identify all the members of class it is impracticable to join all the members of the class in this action.

303. There are only common questions of fact and law with respect to all class members, which are whether they are insureds, whether they made claims, and whether their claims were not paid, were not paid in full, were not timely paid, or whose insurance coverage was cancelled.

304. The claim made by the representative party, plaintiff, is typical of the claims of each class member.

305. The representative of the class, plaintiff, fairly, vigorously, and zealously will represent and adequately protect the interests of all class members.

306. Prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the class, and defendants have acted and will continue to act on grounds generally

applicable to every class member, and the class questions not only predominate but are the only questions that exist.

307. Therefore, this action is maintainable under F.R. Civ. P. Rule 23(a), & (b)(1)(A), (B)(1) and (3).

308. The nature of the notice to be provided to class members should be as follows:  defendants should be required to identify all insureds whose claims were denied, not paid in full, or not timely paid, or whose insurance contracts were cancelled due to defendants contending premiums had not timely been paid, and to provide a suitable notice to all class members.

**WHEREFORE**, plaintiff requests relief against each defendant as follows:

1. General damages, including damages for emotional upset, to be determined, in a sum exceeding $75,000.00, exclusive of interest and costs;

2. Punitive damages in a sum to be determined by a jury, and as to defendant companies, as a percentage of the net worth and yearly profits of defendant companies, in a sum sufficient to deter future misconduct, and not less than $1,000,000.00;

3. The trebling of all damages for the RICO violations;

4. Costs of suit;

5. Attorneys' fees;

7. Interest;

8. Injunctive relief that defendants properly pay claims that are valid, not refuse to pay claims that are valid, not to engage unfair claims practices, and to reinstate plaintiff's insurance coverage; and,

//

//

//

//

9. Such other relief as is just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury of all issues.

STEPHEN YAGMAN

//

## **DECLARATION OF SERVICE**

On the date set forth on the signature line below, I shall have served the preceding paper, first amended complaint, on all interested parties whose names and whose addresses are listed below the signature line, by placing true copies thereof enclosed in sealed envelopes with full postage thereon fully prepaid in the United States mail at Los Angeles, California, and   I declare the foregoing to be true under the penalty of perjury at Los Angeles, California on the date stamped on the signature line, below.

_Stephen Yagman_                                        11/09/17
SIGNATURE                                                   DATE

## **SERVICE LIST**

Richard Doren, Esq.
Gibson, Dunn & Crutcher
333 South Grand Avenue
Los Angeles, CA 90071

PRIORITY OVERNIGHT

90012
CA-US
LAX

8097 3335 0610

WZ EMTA

fedex
8097 3335 0610

fedex.com  1800.GoFedEx  1800.463.3339

fedex Express

Package
US Airbill

FedEx
Tracking
Number   8097 3335 0610

1 From   Date 11/06/17   S.Y

Sender's Name

Company  WAGMAN & RETCHMANN

Address  475 WASHINGTON BLVD

City  VENICE   State CA   ZIP 90292-3200

Phone  310 452-3200

2 Your Internal Billing Reference  MEMORAL

3 To
Recipients Name  CLERK

Company  US DISTRICT CT

Address  312 N SPRING

Address

City  LA   State CA   ZIP 90012

Phone

RECEIVED
CLERK, U.S. DISTRICT COURT
NOV -9 2017
CENTRAL DISTRICT OF CALIFORNIA
BY  DEPUTY

4 Express Package Service   *To most locations.

Next Business Day
☐ FedEx First Overnight
☐ FedEx Priority Overnight
☐ FedEx Standard Overnight

2 or 3 Business Days
☐ FedEx 2Day A.M.
☐ FedEx 2Day
☐ FedEx Express Saver

Packages up to 150 lbs.

5 Packaging
☐ FedEx Envelope  ☐ FedEx Pak  ☐ FedEx Box  ☐ FedEx Tube  ☐ Other

6 Special Handling and Delivery Signature Options

☐ Saturday Delivery
☐ No Signature Required
☐ Direct Signature
☐ Indirect Signature

Does this shipment contain dangerous goods?
☐ No   ☐ Yes   ☐ Yes
☐ Cargo Aircraft Only
☐ Dry Ice

7 Payment  Bill to
☐ Sender  ☐ Recipient  ☐ Third Party  ☐ Credit Card  ☐ Cash/Check

Total Packages  01   Total Weight

fedex.com 1.800

05874005

Form ID No.  0215

787
RT FZ
1  A
10:30
0.90
11.00

Extreme

8097 3335 0610

611