UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)          Date:  March 20, 2018
Title:    Stephen Yagman v. Natassia Kelly, et al.

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

          Deputy Clerk:                   Court Reporter:
          Rita Sanchez                    Not Reported

          Attorneys Present for Plaintiff:   Attorneys Present for Defendant:
          None Present                       None Present

**Proceedings (In Chambers):**   ORDER RE: DEFENDANTS' MOTION TO
                                 DISMISS FIRST AMENDED COMPLAINT FOR: (1)
                                 LACK OF PERSONAL JURISDICTION; (2)
                                 INSUFFICIENT SERVICE OF PROCESS; (3)
                                 FAILURE TO STATE A CLAIM; AND,
                                 ALTERNATIVELY, MOTION TO STRIKE [45]

        Before the Court is the Motion to Dismiss First Amended Complaint for: (1)
Lack of Personal Jurisdiction; (2) Insufficient Service of Process; (3) Failure to State a
Claim; and, Alternatively, Motion to Strike (the "Motion"), filed by Defendants
Natassia Kelly, Billie Joe Glabicki, Chelsea Jeffers, Mark T. Bertolini, Karen S. Lynch
(collectively, the "Individual Defendants"), First Health Life & Health Insurance
Company ("First Health"), Aetna, Inc., Aetna Life Insurance Company ("Aetna Life"),
and Coventry Health Care, Inc. ("Coventry") on November 27, 2017.  (Docket No. 45).
On January 11, 2018, Plaintiff Stephen Yagman filed three opposition briefs: (1)
Plaintiff's Opposition to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) for
Failure to State Claims on Which Relief Can Granted [sic] ("12(b)(6) Opp.") (Docket
No. 57); (2) Plaintiff's Opposition to Defendants' Rule 12(b)(2),(5) Motion to Dismiss
for Lack of Personal Jurisdiction and Insufficient Service of Process ("12(b)(2) Opp.")
(Docket No 58); and (3) Plaintiff's Opposition to Defendants' Rule 12(f) Motion to
Strike ("12(f) Opp.") (Docket No. 59).  On January 16, 2018, Defendants filed a Reply.
(Docket No. 60).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018
Title:    Stephen Yagman v. Natassia Kelly, et al.

The Motion was scheduled to be heard on January 29, 2018.  The Court read and considered the papers on the Motion and deemed the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  The hearing was therefore vacated and removed from the Court's calendar.

For the reasons set forth below, as to Defendants Aetna, Inc., Aetna Life, Coventry, and the Individual Defendants the Motion is **GRANTED** pursuant to Rule 12(b)(2), and the action is **DISMISSED** without prejudice for lack of jurisdiction.

As to Defendant First Health, the Motion is **GRANTED** *without leave to amend* pursuant to Rule 12(b)(6), and the action is **DISMISSED** with prejudice.

The Motion is **DENIED** *as moot* insofar as Defendants request that the Court strike various portions of the First Amended Complaint.

## I.    **BACKGROUND**

### A.    **Procedural Background and the First Amended Complaint**

Plaintiff filed his original Complaint on August 14, 2017.  (Docket No. 1).  On October 16, 2017, Defendants filed a motion to dismiss the Complaint.  (Docket No. 24).  Plaintiff filed an opposition on October 30, 2017, and Defendants filed a reply on November 6, 2017.  (Docket Nos. 29, 33).  On November 9, 2017, while Defendants' motion to dismiss the Complaint was *sub judice*, Plaintiff filed the operative First Amended Complaint, mooting the motion.  (Docket Nos. 37, 49).

Plaintiff alleges that he is a citizen of New York who resides in California, and that Defendants all hail from "states of the United States other than New York."  (FAC ¶¶ 1-2).  Although he does not presently allege where any of the Defendants are domiciled (except for not in New York), in his original Complaint Plaintiff alleged that Defendants are citizens of Pennsylvania, Connecticut, and Maryland.  (Complaint ¶ 1).  Plaintiff alleges that "[a]ll defendants did both general business and case-specific business directed at both plaintiff and the State of California…"  (FAC ¶ 2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 17-6022-MWF (PJWx)          Date:  March 20, 2018**
Title:     Stephen Yagman v. Natassia Kelly, et al.

The Individual Defendants "are individuals who work for, are employed by, are agents of, and are business parts of" First Health, Aetna, Inc., Aetna Life, and/or Coventry (together, the "Company Defendants").  (*Id.* ¶ 3).

"Plaintiff and the [C]ompany [D]efendants entered into a written contract, or a 'plan'" (which Plaintiff did not attach to the FAC and allegedly does not possess), pursuant to which, beginning on January 1, 2017, Plaintiff "agreed to pay monthly premiums of $42.30 and … the [C]ompany [D]efendants agreed to pay for plaintiff's prescription medications that were listed, as covered on defendants' formulary…" (*Id.* ¶ 5).

At the time Plaintiff and the Company Defendants entered this contract or plan, the Company Defendants allegedly "did not intend to insure Yagman, and misrepresented that they would insure Yagman…" (*Id.* ¶ 7).  In reliance on the representations that he would be insured, Plaintiff "always timely paid defendants' monthly premiums, but beginning on June 1, 2017 all defendants refused to pay for plaintiff's prescription medications, and thereby defrauded Yagman, breached the contract/plan, damaged Yagman, who was forced to pay for his own prescription medications, and from June 1, 2017 until October 23, 2017, sometimes having to go without the medications." (*Id.*).

In April and May 2017, Defendants sent Plaintiff mail that "falsely and fraudulently [stated] … that he had failed timely to pay his premiums and that if he would pay them by May 31, 2017, all defendants would continue his prescription medication coverage." (*Id.* ¶ 8).  "In reliance on these defendants' representations," on May 9, 2017 Plaintiff "paid monthly premiums for the months of March, April, and May, 2017, in the total sum of $126.90 …, but defendants then lied and contended that these premiums had not timely, by May 31, 2017, been paid." (*Id.* ¶ 12).  "All defendants failed and refused timely to pay Yagman's claims for prescription medications after May 31, 2017, and until October 23, 2017." (*Id.* ¶ 13).

On several occasions between April 14, 2017 and June 26, 2017, Kelly, Glabicki, and Jeffers, "by both United States mail and by telephone, refused Yagman's

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018
Title:    Stephen Yagman v. Natassia Kelly, et al.

repeated requests to pay for plaintiff's prescription medications, threatened to terminate, terminated, and refused to re-instate plaintiff's prescription medication insurance [c]overage, all on behalf of all of the [C]ompany [D]efendants…" (*Id.* ¶ 14). Kelly, Glabicki, and Jeffers "also refused, and continue to refuse, to refund to plaintiff the premiums plaintiff had paid to the [C]ompany [D]efendants on May 25, 2017, for the months of June, July, and August, 2017" – a total sum of $126.90. (*Id.* ¶¶ 14-15). All of this was done pursuant to "the policies, practices, procedures, and customs of the [C]ompany [D]efendants, and those who managed and ran those companies, defendants Bertolini and Lynch, who drafted those policies, *etc.*, and who ratified, acquiesced in, and condoned the other individual defendants' wrongful conduct." (*Id.* ¶ 14).

The Company Defendants "intended to induce Yagman to enter into the contract/plan of insurance, so that Yagman would pay the premiums to these defendants, but then defendants would not pay for Yagman's prescription medications." (*Id.* ¶ 17).

Plaintiff alleges that all Defendants have engaged in similar conduct "[w]ithin the last 10 years, in at least 10 instances." (*Id.* ¶ 25). Specifically, Plaintiff alleges that Defendants "fraudulently … refus[ed] to pay benefits to … Elizabeth L., an insured from June 2011 to June 2012…" (*Id.*).

On "October 17 or October 23, 2017," after Plaintiff commenced this action, Defendants reinstated Plaintiff's "insurance/plan." (*Id.* ¶ 20).

Plaintiff asserts seven claims for relief: (1) breach of contract; (2) "fraudulent breach of written agreement"; (3) fraud; (4) "financial (elder) abuse"; (5) "unfair business practices," (6) "insurance bad faith"; and (7) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (*Id.* ¶¶ 126-131, 227-269).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018
Title:        Stephen Yagman v. Natassia Kelly, et al.

### B.    Other Jurisdictionally Relevant Facts

In connection with their Motion, Defendants filed a Declaration of Edward Lee, who holds the position of Executive Director and Senior Counsel at Aetna, Inc. (Declaration of Edward Lee in Support of Motion to Dismiss First Amended Complaint ("Lee Decl.") (Docket No. 45-1)).  Mr. Lee states the following:

- Aetna, Inc., a Pennsylvania corporation with its principal place of business in Connecticut, is a holding company.  It is not a health maintenance organization or an insurance company, and it does not insure or provide any administrative services to the First Health Part D Value Plus plan in which Plaintiff has been enrolled at all relevant times.  Aetna Inc. does not conduct business in California, it does not have any offices or employees in California, and it does not conduct any sales or marketing activities in California.

- Aetna Life is a Connecticut corporation with its principal place of business in Connecticut.  It is a subsidiary of Aetna Inc.  Aetna Life does not insure or provide any administrative services to the First Health Part D Value Plus plan.

- First Health is a Texas corporation with its principal place of business in Illinois.  It is a subsidiary of Aetna Inc.

- Coventry was a Delaware corporation that ceased to exist in 2013, when it merged with Aetna Health Holdings, LLC.  Coventry does not insure or provide any administrative services to the First Health Part D Value Plus plan.

(Lee Decl. ¶¶ 3-7).

CIVIL MINUTES—GENERAL                                    5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018
Title:     Stephen Yagman v. Natassia Kelly, et al.

## II.    **LEGAL STANDARDS**

### A.    **Lack of Personal Jurisdiction**

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction.  *See, e.g., Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  When considering a motion to dismiss for lack of personal jurisdiction, courts are not confined to the plaintiff's complaint; it is appropriate to consider evidence such as party declarations.  *See, e.g., Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 949 (N.D. Cal. 2015) ("A trial court may rule on the issue of personal jurisdiction by 'relying on affidavits and discovery materials without holding an evidentiary hearing…'") (quoting *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986)); *Williams v. Yamaha Motor Co. Ltd.*, No. CV 13-05066 (BRO) (VBKx), 2014 WL 12597039, at *6-7 (C.D. Cal. Aug. 19, 2014) (considering declarations in connection with motion to dismiss for lack of personal jurisdiction).

"Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (internal quotation marks and citations omitted).  "A plaintiff may not simply rest on the bare allegations of the complaint…, [b]ut uncontroverted allegations must be taken as true, and conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (internal quotation marks and citations omitted).

### B.    **Failure to State a Claim**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

of what the . . . claim is and the grounds upon which it rests . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  Where the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible."  *Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018
Title:     Stephen Yagman v. Natassia Kelly, et al.

Fraud-based allegations are governed by Rule 9(b).   "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge[.]"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted).  Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106.  Such averments must be specific enough to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Id.*  (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

## III.   DISCUSSION

Through their Motion, Defendants argue that: (1) Defendants Aetna, Inc., Aetna Life, Coventry, and all Individual Defendants (*i.e.*, all Defendants apart from First Health) are not subject to personal jurisdiction in this Court, so the First Amended Complaint must be dismissed as to them pursuant to Rule 12(b)(2); (2) Plaintiff has not properly served any of the Defendants, and the First Amended Complaint must therefore be dismissed pursuant to Rule 12(b)(5); (3) the First Amended Complaint fails to state any viable claims for relief and must be dismissed pursuant to Rule 12(b)(6); and, alternatively, if the Court does not dismiss the First Amended Complaint in its entirety, (4) the Court should strike Plaintiff's class action allegations, his prayer for punitive damages, and certain allegations concerning defense counsel pursuant to Rule 12(f).

In their Reply, Defendants note that they "have agreed to waive service of process and no longer argue for dismissal under Rule 12(b)(5)" (Reply at 2 n. 1), so the Court does not address the parties' service-related arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018
Title:    Stephen Yagman v. Natassia Kelly, et al.

### A.    Personal Jurisdiction

Aetna Inc., Aetna Life, Coventry, and the Individual Defendants (*i.e.,* all defendants apart from First Health) move to dismiss for lack of personal jurisdiction. (Mot. at 4).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [non-resident defendants]." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). "California's long-arm statute," Cal. Code Civ. Proc. § 410.10, "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.* Because section 410.10 "is coextensive with federal due process requirements …, the jurisdictional analyses under state law and federal due process are the same." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal quotation marks and citation omitted).

There are two general varieties of personal jurisdiction: general and specific. General jurisdiction, which "permits a court to hear any and all claims against a defendant, whether or not the conduct at issue has any connection to the forum," may only be exercised where a defendant's contacts with the forum are "continuous and systematic." *Ranza*, 793 F.3d at 1069-70 (internal quotation marks and citations omitted). "Specific jurisdiction exists when a case 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Ranza*, 793 F.3d at 1068 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868 (1984)). In order to be subject to a court's specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014).

### 1.    General Jurisdiction

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose [*i.e.,* general] jurisdiction there. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

a corporation, it is an equivalent place, one in which the corporation is fairly regarded
at home."  *Daimler*, 134 S.Ct. at 760 (internal quotation marks and citations omitted).
Generally speaking, a corporation is "at home" for personal jurisdiction purposes only
in its place of incorporation and where it maintains its principal place of business.  *See
id*.; *see also Ranza*, 793 F.3d at 1069.

In his initial Complaint, Plaintiff alleged that all Defendants are citizens of
"Pennsylvania, Connecticut, and Maryland."  (Complaint ¶ 1).  This allegation remains
binding upon Plaintiff, particularly where he merely alleges in his First Amended
Complaint that the Defendants hail from unspecified locations other than New York.
(*See* FAC ¶ 1); *see generally American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224,
226 (9th Cir. 1988) ("Factual assertions in pleadings …, unless amended, are
considered judicial admissions conclusively binding on the party who made them.");
*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1075 (E.D.
Cal. 2011) ("The court does not ignore the prior allegations in determining the
plausibility of the current pleadings.") (internal citations omitted).

It is undisputed that none of the Company Defendants are incorporated in
California and that none of them maintain their principal places of business in
California.  The Company Defendants are thus not "at home" in California, and not
subject to general jurisdiction here.

And Plaintiff does not allege that any of the Individual Defendants are domiciled
in California; he alleges that they are domiciled in Pennsylvania, Connecticut, and
Maryland (and not in New York).  The Individual Defendants are thus not subject to
general jurisdiction in California.

### 2.      Specific Jurisdiction

Courts may "exercise specific jurisdiction over a non-resident defendant only
when three requirements are satisfied: (1) the defendant either purposefully directs its
activities or purposefully avails itself of the benefits afforded by the forum's laws; (2)

---

**CIVIL MINUTES—GENERAL**                                    **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                    Date:  March 20, 2018

Title:      Stephen Yagman v. Natassia Kelly, et al.

the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice, i.e., it is reasonable." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (internal quotation marks and citation omitted).  "The plaintiff bears the burden of satisfying the first two prongs of the test."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S.Ct. 2174 (1985)).

Nothing in the First Amended Complaint suggests that any of the Individual Defendants, Aetna, Inc., Aetna Life, or Coventry (again, First Health acknowledges it is subject to specific jurisdiction in this Court) purposefully directed their suit-related activities (to the extent any are alleged) at California, purposefully availed themselves of the benefits of California's laws, or otherwise engaged in any "suit-related conduct [that] create[d] a substantial connection" between them and California. *Id.* (quoting *Walden*, 134 S.Ct. at 1121).

In his First Amended Complaint, Plaintiff alleges that "[a]ll defendants did both general business and case-specific business directed at both plaintiff and the State of California…"  (FAC ¶ 2).  Apart from that single unadorned allegation, nothing in the First Amended Complaint suggests that the Individual Defendants, Aetna, Inc., Aetna Life, or Coventry took any suit-related actions that were purposefully directed at California other than certain Individual Defendants communicating with Plaintiff pursuant to their duties as employees of the Company Defendants.  Similarly, in his Opposition, Plaintiff argues merely that "defendants targeted California consumers, of whom plaintiff is one, and purposefully directed their allegedly wrongful conduct at California residents…"  (12(b)(2) Opp. at 13-14).

The fact that certain Individual Defendants, in their capacities as employees of one or more of the Company Defendants, communicated with Plaintiff, who happens to be a California resident, about his First Health Medicare Part D plan, does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

subject them to specific jurisdiction in California.  In *Walden*, the Supreme Court made clear that "the plaintiff cannot be the only link between the defendant and the forum." 134 S. Ct. at 1122; *see also id.* at 1123 ("Due process requires that a defendant be haled into court in a forum State based on *his own affiliation* with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.") (quoting *Burger King*, 471 U.S. at 475); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) ("a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction") (internal quotation marks and citations omitted).

Moreover, the fact that First Health (which does not contest jurisdiction) is subject to personal jurisdiction in California does not render the other Defendants subject to personal jurisdiction merely because they interacted with Plaintiff on behalf of First Health or by dint of their relationships to First Health.  *See, e.g., TV Ears, Inc. v. SYK Group, LLC*, No. 16cv867-GPC(WVG), 2016 WL 6248539, at *3 (S.D. Cal. Oct. 26, 2016) ("The mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents and employees are subject to jurisdiction as well… For jurisdictional purposes, the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals.") (internal quotation marks and citations omitted); *Stewart v. Screen Gem-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) ("Generally, the existence of a parent-subsidiary or mere sister-sister entity relationship 'is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum.'") (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001)).

In sum, Plaintiff's bare allegation that unspecified "defendants" did "case-specific business directed at both plaintiff and the State of California" does not support specific jurisdiction.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

### 3.    Alter-Ego Jurisdiction

Plaintiff argues that all Defendants are subject to jurisdiction in California pursuant to the "alter ego" jurisdictional doctrine.  (12(b)(2) Opp. at 9-12).  "[T]he alter ego test may be used to extend personal jurisdiction to a foreign parent *or* subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate."  *Ranza*, 793 F.3d at 1073 (emphasis in original).  "To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two or more entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice."  *Id.* (internal quotation marks and citations omitted).  "The 'unity of interest and ownership' prong of this test requires a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former."  *Id.* (internal quotation marks and citations omitted).  "This test envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation."  *Id.* (internal quotation marks and citations omitted).

Plaintiff points to three paragraphs of the First Amended Complaint that purportedly provide "a basis for alter ego liability and jurisdiction over … all [Defendants]."  (12(b)(2) Opp. at 10).

- Paragraph 3: The Individual Defendants "are individuals who work for, are employed by, are agents of, and are business parts of" the Company Defendants.

- Paragraph 23: "The company defendants are parts of the same insurance group and/or company, and/or are subsidiaries of one another."

- Paragraph 242: "Each defendant, in its or his or her own right, and all defendants are together, collectively, both enterprises and associated-in-

---

**CIVIL MINUTES—GENERAL**                                          13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

fact enterprises, within the meaning of 18 U.S.C. 1961(4), and therefore
are RICO enterprises…"

These bare allegations, devoid of any factual enhancement elsewhere in the First
Amended Complaint, do not support alter-ego jurisdiction.  *See, e.g., Williams*, 851
F.3d at 1022 (affirming district court's dismissal where the complaint contained
"almost no factual allegations regarding the nature of the parent-subsidiary
relationship, and the evidence … submitted in opposition to [the] motion to dismiss did
not provide any additional clarity"); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d
970, 983-84 (N.D. Cal. 2016) (dismissing for lack of personal jurisdiction where
plaintiffs had not adequately pled alter ego theory due to their failure to address six of
nine factors that are often considered in connection with the "unity of interest" prong
of the test, including commingling of assets, use of the same offices, inadequate
capitalization, and disregard of corporate formalities).

Finally, in connection with his 12(b)(6) Opposition, Plaintiff filed a collection of
documents – including a Wikipedia page, bills he received, and other documents
relating to his First Health Medicare Part D plan that refer to "Aetna" or display the
"Aetna" logo.  (Docket No. 57 at 26-55).  He argues that these documents establish
that "[a]ll of them [the Company Defendants] hold themselves out, consistently and
interchangeably, as one another."  (12(b)(2) Opp. at 10).  One or more of the Company
Defendants' use of the "Aetna" logo or trade name does not render the Defendants
alter egos of one another.  *See, e.g., Eagle Canyon Owners' Ass'n v. Waste Mgmt.,
Inc.*, No. 16cv2811-LAB (WVG), 2017 WL 3017501, at *5 (S.D. Cal. Jul. 13, 2017)
("Use of a licensed logo on contracts, trucks, or online doesn't make a parent company
party to a contract or subject to personal jurisdiction.") (internal citations omitted);
*Negron-Torres v. Verizon Communications, Inc.*, 478 F.3d 19, 26 (1st Cir. 2007) ("We
have held that the mere use of a trademark or logo does not suffice to demonstrate the
existence of the requisite minimum contacts."); *Fletcher v. Atex, Inc.*, 68 F.3d 1451,
1460 (2d Cir. 1995) (subsidiary's use of parent's "logo [was] not evidence that the two
companies operated as a single economic entity") (internal quotation marks and
citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018
Title:    Stephen Yagman v. Natassia Kelly, et al.

Accordingly, the Court cannot assert personal jurisdiction over the Individual Defendants, Aetna, Inc., Aetna Life, or Coventry under an alter ego theory.

### 4.    "Conspiracy" and RICO Jurisdiction

Plaintiff also argues that the Individual Defendants, Aetna, Inc., Aetna Life, and Coventry are subject to personal jurisdiction under "a conspiracy theory of jurisdiction" and under the jurisdictional provision of the RICO statute (28 U.S.C. § 1965).  (Opp. at 16-17).  The Court disagrees.

As to the conspiracy theory, Plaintiff argues that "it is not denied that at least one co-conspirator [*i.e.*, First Health] is subject to jurisdiction, and therefore so are the other defendants subject to jurisdiction."  (12(b)(2) Opp. at 16).  Plaintiff fails to cite a single opinion from any California court, the Ninth Circuit, or any district court within the Ninth Circuit that endorses "a conspiracy theory of jurisdiction," and the Court can find none.  *See, e.g., In re Automobile Antitrust Cases I and II*, 135 Cal. App. 4th 100, 113, 37 Cal. Rptr. 3d 258 (2005) ("Allegations of a conspiracy do not establish as a matter of law that if one conspirator comes within the personal jurisdiction of our courts, then California may exercise jurisdiction over other non-resident defendants who are alleged to be part of that same conspiracy.  Personal jurisdiction must be based on forum-related acts that were personally committed by each non-resident defendant."); *Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1268 (W.D. Wash. 2005) (noting that "[t]he Ninth Circuit has yet to reach a conclusion on the validity of a conspiracy theory of personal jurisdiction" and that Washington State "has rejected the conspiracy theory of long-arm jurisdiction, finding that the theory violates due process principles.") (citing *Underwager v. Channel 9 Australia*, 69 F.3d 361, 364 (9th Cir. 1995)).  The Court thus declines to entertain Plaintiff's "conspiracy theory of jurisdiction."

Plaintiff also argues that the Court has jurisdiction over all Defendants pursuant to 18 U.S.C. § 1965(b), a jurisdictional provision of the RICO statute, which provides:

---

**CIVIL MINUTES—GENERAL**                                                        **15**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 17-6022-MWF (PJWx)                    Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

> In any action under section 1964 of this chapter [RICO's
> "civil remedies" provision] in any district court of the United
> States in which it is shown that the ***ends of justice require***
> that other parties residing in any other district be brought
> before the court, the court may cause such parties to be
> summoned, and process for that purpose may be served in
> any judicial district of the United States by the marshal
> thereof.

18 U.S.C. § 1965(b) (emphasis added).

    As discussed below, after two attempts, and with the aid of Defendants' first motion to dismiss, Plaintiff has failed to state a viable RICO claim.  Obviously, there can be no jurisdiction over defendants otherwise not subject to jurisdiction pursuant to section 1965(b) if there is not a plausible underlying RICO claim.  Moreover, "[f]or nationwide service of process to be imposed under section 1965(b) … the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators."  *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).  Plaintiff, who has not even attempted to show there is not some other federal district court that could exercise jurisdiction over all defendants, has not met that burden.  *See Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 989-90 (C.D. Cal. 2013) ("While it is not clear that there is another district that could exercise jurisdiction over all defendants, plaintiff has the burden of showing affirmatively that this is the case.").

    The Court thus does not have personal jurisdiction over Aetna, Inc., Aetna Life, Coventry, or the Individual Defendants under RICO or any of Plaintiff's other suggested theories.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                    Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

### 6.    No Jurisdictional Discovery

Plaintiff requests jurisdictional discovery, which he "contends … will adduce evidence that all defendants have sufficient presences in and contacts with California to subject them to case-specific jurisdiction in this action, and that defendants are all one another's alter egos."  (12(b)(2) Opp. at 3).  Plaintiff contends that he "is not bound by defendants' declarant Lee's conclusory, self-serving contentions as to jurisdiction," and that "[p]ropounding interrogatories and deposing Lee will show that he is a liar and is making stuff up."  (*Id.* at 3-4).

Plaintiff has offered zero details supporting his assertion that discovery will establish that Aetna, Inc., Aetna Life, Coventry, and/or the Individual Defendants are subject to this Court's jurisdiction or that Mr. Lee is a "liar."  Plaintiff's speculation and his subjective mistrust of Defendants and Mr. Lee is not a basis for permitting jurisdictional discovery.  *See, e.g., Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming district court's denial of the plaintiff's request for jurisdictional discovery where it "was based on little more than a hunch that it might yield jurisdictionally relevant facts"); *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995) ("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery.")  (internal quotation marks, citations, and alterations omitted).

Accordingly, Plaintiff's request for jurisdictional discovery is **DENIED**.

In light of the facts that Plaintiff has failed to plausibly allege the existence of personal jurisdiction over the Aetna, Inc., Aetna Life, Coventry, or the Individual Defendants, and that Plaintiff is not entitled to jurisdictional discovery, the Motion is **GRANTED** pursuant to Rule 12(b)(2) as to Defendants Aetna, Inc., Aetna Life, Coventry, and the Individual Defendants.  The action is **DISMISSED** without prejudice for lack of personal jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

Because Defendant First Health does not contest personal jurisdiction, the Court now turns to whether Plaintiff has succeeded in stating a claim against First Health.

### B.    The Viability of Plaintiff's Claims

####   1.    Breach of Contract and "Fraudulent Breach of Written Agreement" Claims (Counts 1 and 2)

Plaintiff alleges that he and "the company defendants entered into a written contract, or a 'plan,' as defendants call it," pursuant to which "the company defendants" were to "insure plaintiff for prescription medications, beginning on January 1, 2017," and to "pay for plaintiff's prescription medications that were listed, as covered on defendants' formulary." (Complaint ¶ 5). Plaintiff also alleges, seemingly inconsistently, that "the company defendants" agreed to pay for "whichever medications were prescribed for plaintiff" and that "it was not known which medications would be prescribed" when Plaintiff and "the company defendants" entered this contract. (*Id.*). Plaintiff alleges that his obligations under the contract/plan was to "pay monthly premiums of $42.30" "by the first of each calendar month." (*Id.* ¶¶ 5, 128).

Plaintiff acknowledges that he did not make timely monthly premium payments for the months of March, April, and May 2017, but alleges that in "April and May, 2017, all defendants … communicated … that … if he would pay [the past-due premiums] by May 31, 2017, all defendants would continue his prescription medication coverage." (*Id.* ¶ 8). Plaintiff alleges that on May 9, 2017, he submitted a payment of $126.90, which was meant to cover premiums for March, April, and May, but that "defendants then lied and contended that these premiums had not timely, by May 31, 2017, been paid."

Plaintiff alleges that "beginning on June 1, 2017, all defendants refused to pay for plaintiff's prescription medications, and thereby … breached the contract / plan." (*Id.* ¶ 7). The breach caused damage to Plaintiff because he "was forced to pay for his

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018
Title:     Stephen Yagman v. Natassia Kelly, et al.

own prescription medications, and from June 1, 2017 until October 23, 2018,
sometimes having to go without the medications."

Plaintiff does not attach a copy of the alleged contract/plan or recite any of its
alleged provisions with specificity, as he contends that "Defendants did not provide
any copy of the contract/plan to plaintiff."  (*Id.* ¶ 131).  Plaintiff does not explain why
he lacks his own copy of a contract/plan to which he himself is a party, if he made any
effort to obtain a copy from First Health, or how, if he never possessed a copy, he
would know enough about the terms of the contract / plan to allege that there has been
a breach.

While Plaintiff need not necessarily attach the alleged contract/plan to his
complaint, he must at least quote the relevant provisions in his complaint or, at a bare
minimum, describe them in enough detail to allow the Court to determine the nature of
parties' obligations and if there has plausibly been performance on Plaintiff's part and
a breach on any of the Defendants' parts.  His failure to do that is fatal to his breach of
contract and "fraudulent breach of written agreement" claims.  *See, e.g., Conroy v.
Capital One, N.A.*, No. EDCV 14-01314-VAP (RZx), 2014 WL 12586070, at *6 (C.D.
Cal. Sept. 15, 2014) (dismissing breach of contract and good faith and fair dealing
claims where plaintiff did "not attach these documents [comprising the alleged
contract], set out their terms verbatim in the FAC, or provide a careful analysis of their
terms."); *Kent v. Microsoft Corp.*, No. SACV 13-0091 DOC (ANx), 2013 WL
3353875, at *3 (C.D. Cal. July 1, 2013) (dismissing breach of contract claim where
"Plaintiff provides no information as to what exactly was promised by the Defendant"
and "does not provide any of the terms of his alleged contract with Defendant");
*Alvarado v. Aurora Loan Services, LLC*, No. SACV 12-0524-DOC-(JPRx), 2012 WL
4475330, at *4 (C.D. Cal. Sept. 20, 2012) ("[I]f the action is based on alleged breach
of a written contract, the terms must be set out verbatim in the body of the complaint or
a copy of the written agreement must be attached and incorporated by reference…
Alternatively, a plaintiff can successfully plead a breach of contract claim by alleging
the substance of its relevant terms" but that "is more difficult because it requires a

CIVIL MINUTES—GENERAL                                  19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018
Title:     Stephen Yagman v. Natassia Kelly, et al.

careful analysis of the instrument, comprehensiveness in statement, and avoidance of
legal conclusions.") (internal quotation marks and citations omitted).

Moreover, since Plaintiff vaguely claims that "all defendants" breached the
alleged contract/plan in unspecified ways, it is impossible to determine whether First
Health (or any other Defendant) had any obligations under the alleged contract/plan,
what those obligations were, whether First Health (or any other Defendant) breached
those obligations, or how it/they breached them.  These deficiencies also render
Plaintiff's breach of contract and "fraudulent breach of written agreement" claims
nonviable.  *See Mahmoud v. Select Portfolio, Inc.*, No. 3:17-cv-00568-MEJ, 2017 WL
3387470, at *4 (N.D. Cal. Aug. 7, 2017) ("Plaintiff's breach of contract claim fails
because he does not specify which defendant, Wells Fargo or Select Portfolio, entered
into a binding … agreement with him, nor which defendant breached the
[agreement].").

Plaintiff had the aid of Defendants' motion to dismiss his original Complaint, in
which Defendants raised arguments that are identical to those raised in the Motion, yet
failed to remedy the identified pleading deficiencies.  Accordingly, the Motion is
**GRANTED** *without leave to amend* with respect to Plaintiff's breach of contract and
"fraudulent breach of written agreement" claims for relief (Counts 1 and 2) as against
First Health.

## 2.    Fraud Claim (Count 3)

In California, a plaintiff alleging fraud must establish the following elements:
"(a) misrepresentation (false representation, concealment, or nondisclosure);
(b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)
justifiable reliance; and (e) resulting damage." *Lovejoy v. AT&T Corp.*, 92 Cal. App.
4th 85, 93, 111 Cal. Rptr. 2d 711 (2001).

Plaintiff's fraud allegations of course are governed by Rule 9(b).  "Rule 9(b)
demands that, when averments of fraud are made, the circumstances constituting the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)          Date:  March 20, 2018
Title:       Stephen Yagman v. Natassia Kelly, et al.

alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge[.]"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted).  Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106.  Such averments must be specific enough to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Id*. (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

In his 12(b)(6) Opposition, Plaintiff points to "averments 7-21" in his First Amended Complaint, arguing that those paragraphs collectively satisfy Rule 9(b)'s heightened pleading standard insofar as "the who is identified defendants [and] the when is on the dates and occasions from the issuance of the insurance contract until present…"  (12(b)(6) Opp. at 5-6).

The crux of Plaintiff's fraud claim is that the "company defendants did not intend to insure" Plaintiff when the parties entered the alleged contract/plan at some unspecified point prior to January 1, 2017, but that the "company defendants" nonetheless made "material representation[s] that they would insure Yagman," which "Yagman relied on" and therefore "always timely paid defendants' monthly premiums."  (Complaint ¶ 7).  Plaintiff also alleges that in "April and May, 2017," after he had failed to make his monthly premium payments for March and April, "all defendants falsely and fraudulently communicated to Yagman by USPS mail that he had failed to timely pay his premiums and that if he would pay them by May 31, 2017, all defendants would continue his prescription medication coverage," but that those "representations were false" in that "defendants" still failed to reinstate his coverage after "Yagman on May 9, 2017 paid monthly premiums for the months of March, April, and May, 2017, in the total sum of $126.90."  (*Id.* ¶¶ 8, 12).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018
Title:    Stephen Yagman v. Natassia Kelly, et al.

By lumping "all defendants" together, it is impossible to determine which Defendant allegedly made which "material representation" when.  Plaintiff has thus failed to establish the "who" element of his fraud claim.  Plaintiff also fails to plead the specific content of the allegedly false representations, and thus fails to establish the "what" element of a viable fraud claim.

And more fundamentally, Plaintiffs' allegations regarding "all defendants" representing that they would continue Plaintiffs' Medicare Part D plan notwithstanding his failure to make timely payments in March and April 2017 so long as he paid his premiums for March, April, and May by May 31, 2017, and "all defendants" subsequently terminating Plaintiff's plan notwithstanding his alleged payment of $126.90 on May 9, 2017, are far more consistent with an administrative mishap engendered by Plaintiff's unorthodox payment practices than they are with an intent to defraud.  Again, where the facts as pleaded in Plaintiff's First Amended Complaint indicate that there are two alternative explanations, only one of which would result in liability, Plaintiff "cannot offer allegations that are merely consistent with [his] favored explanation but are also consistent with the alternative explanation."  *Eclectic Properties*, 751 F.3d at 996–97.  Drawing "on its judicial experience and common sense," *Ebner v. Fresh, Inc.*, 838 F.3d at 963, and without any supporting allegations of fact to suggest that Plaintiff's version of events might be accurate, the Court finds it beyond implausible that a multi-billion-dollar health insurance company and/or its employees engaged in some concerted effort to trick Plaintiff into handing over $126.90 so that they could abscond with that money.

Plaintiff had the aid of Defendants' motion to dismiss his original Complaint, in which Defendants raised arguments that are identical to those raised in the Motion, yet failed to remedy the identified pleading deficiencies.  Accordingly, the Motion is **GRANTED *without leave to amend*** with respect to Plaintiff's fraud claim (Count 3) as against First Health.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018
Title:     Stephen Yagman v. Natassia Kelly, et al.

### 3.    "Financial (Elder) Abuse" Claim (Count 4)

Plaintiff alleges that he "resides in California and was older than 65 years of age when he entered into the insurance agreement with the company defendants, and all defendants at all times knew that plaintiff was over 65 years of age." (Complaint ¶ 236).  He further alleges that "defendants intended to defraud plaintiff and … engaged in wrongful conduct, and each of them committed financial abuse against plaintiff by seeking, taking, secreting, appropriating, and retaining plaintiff's personal property, the money he paid for monthly premiums, for a wrongful use, and/or with intent to defraud…"  (*Id.* ¶ 237).

Section 15610.30 of California's Elder Abuse Act, Cal. Welf. & Inst. Code. § 15600 *et seq.*, provides that "[f]inancial abuse of an elder occurs when a person or entity… [t]akes, secretes, appropriates obtains, or retains real or personal property of an elder … for a wrongful use or with intent to defraud, or both."  Cal. Welf. & Inst. Code § 15610.30

While the California Supreme Court has not addressed the issue, the California Court of Appeal has held that "[t]he [Elder Abuse] Act does not create a cause of action as such, but provides for attorney fees, costs and punitive damages under certain conditions" in connection with other substantive claims.  *Berkley v. Dowds*, 152 Cal. App. 4th 518, 529, 61 Cal. Rptr. 3d 304 (2007); *see also Olsen v. North American Co. for Life & Health Ins.*, No. E041640, 2009 WL 3166639, at *7 (Cal. Ct. App. Oct. 2, 2009) (unpub.) ("[S]ection 15610.30 defines financial abuse of an elder; it does not create a new tort or independent theory of liability under which plaintiff may recover damages.").

In light of the fact that Plaintiff has not stated any viable substantive claims, and all of his substantive claims are being dismissed without leave to amend as against First Health, the Motion is **GRANTED** *without leave to amend* with respect to Plaintiff's "financial (elder) abuse" claim (Count 4) as against First Health.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                Date:  March 20, 2018

Title:    Stephen Yagman v. Natassia Kelly, et al.

### 4.    "Unfair Business Practices" Claim (Count 5)

In their Motion, Defendants construe Plaintiff's "unfair business practices" claim as one seeking relief under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and, citing to *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012), argue that Plaintiff's First Amended Complaint fails to "indetif[y] any 'unfair' conduct within the meaning of that statute."  (Mot. at 16).

Plaintiff entirely fails to address Defendants' UCL-related arguments in his 12(b)(6) Opposition, arguing simply that "[a] claim for unfair business practices plausibly has been pled."  (12(b)(6) Opp. at 11).  By failing to substantively address Defendants' arguments, Plaintiff acknowledges that he has not stated a viable "unfair business practices" and/or UCL claim, and thereby abandons that claim.  *See, e.g., Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) (plaintiff who failed to address issues raised in a defendant's motion to dismiss in his opposition brief "has effectively abandoned his claim, and cannot raise it on appeal"); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *4 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his … claim should be dismissed because he failed to address Defendants' arguments in his Opposition."); *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.") (citing *Locricchio v. Office of U.S. Trustee*, 313 Fed. Appx. 51, 52 (9th Cir. 2009)).

Plaintiff had the aid of Defendants' motion to dismiss his original Complaint, in which Defendants raised arguments that are identical to those raised in the Motion, yet failed to remedy the identified pleading deficiencies.  Moreover, he has abandoned his "unfair business practices" claim by failing to address Defendants' arguments in his 12(b)(6) Opposition.  Accordingly, the Motion is **GRANTED** *without leave to amend* with respect to Plaintiff's "unfair business practices" claim (Count 5) as against First Health.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                    Date:  March 20, 2018

Title:    Stephen Yagman v. Natassia Kelly, et al.

### 5.    "Insurance Bad Faith" Claim (Count 6)

Plaintiff alleges that "[b]y their conduct in falsely representing to Yagman that were he to pay defendants $126.90 by May 31, 2017 his coverage would not be terminated, all defendants engaged in a scheme of insurance bad faith, by falsely stating they would continue to indemnify him for the losses of which the policy of insurance/plan purported to indemnify, and then failing and refusing to indemnify for those losses or timely to indemnify for them."  (Complaint ¶ 243).  He further alleges, without providing any supporting facts, that "defendants' … fail[ure] to pay for prescription[s] … was not an 'honest mistake' or 'bad judgment' … [or] a simple coverage dispute."  (*Id.* ¶ 245).

"'There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.  This principle is applicable to policies of insurance.'" *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152 (9th Cir. 2002) (quoting *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 658, 328 P.2d 198, 200 (1958)).  "In order to plead a claim for tortious breach of the implied covenant of good faith and fair dealing, a complaint must allege facts which demonstrate a failure or refusal to discharge contractual responsibilities 'prompted not by an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes or disappoints the reasonable expectations of the other party.'"  *Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, 715 F. Supp. 2d 1079, 1087-88 (E.D. Cal. 2010) (quoting *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395, 272 Cal. Rptr. 387 (1990)).

As an initial matter, Plaintiff's failure to state a viable breach of contract claim sinks his "insurance bad faith" (*i.e.*, good faith and fair dealing) claim.  *See, e.g., Mahmoud*, 2017 WL 3387470, at *5 ("Because a claim for breach of the implied covenant of good faith and fair dealing requires the same elements of a contract claim – plus a showing that Defendants deprived Plaintiff of a benefit conferred by the contract – his claim for breach of the covenant of good faith and fair dealing also

---

**CIVIL MINUTES—GENERAL**                                                    25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                    Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

fails.").  Moreover, even if *arguendo* Plaintiff had stated a viable breach of contract claim, as discussed in connection with Plaintiff's fraud claim, the allegations in the First Amended Complaint are more consistent with a garden variety coverage dispute or an administrative oversight brought about by Plaintiff's nonconforming payment practices than they are with bad faith on the part of First Health (or any other Defendant).  Plaintiff thus has failed to state a claim for "insurance bad faith claim."

Plaintiff had the aid of Defendants' motion to dismiss his original Complaint, in which Defendants raised arguments that are identical to those raised in the Motion, yet failed to remedy the identified pleading deficiencies.  Accordingly, the Motion is **GRANTED** *without leave to amend* with respect to Plaintiff's "insurance bad faith" claim (Count 6) as against First Health.

## 6.      RICO Claim (Count 7)

Plaintiff alleges that "[e]ach defendant, in its or his or her own right, and all defendants together, collectively, as well as their employees, who work in and for each defendant company, [are] both enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C. [§] 1961(4)" and that "[a]ll defendants conducted and/or participated in said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. [§] 1962(c)."  (Complaint ¶¶ 242, 246).  He alleges that "[t]he pattern of racketeering activities … include[e] mail fraud, wire fraud, fraudulent concealment, fraud, and potentially obstruction of justice, and defendants' defense of the instant action will constitute a continuation and a part of their RICO schemes."  (*Id.* ¶ 247).  He alleges, "[o]n information and belief [that] the enterprises' activities have occurred on more than one, and on many occasions, over at least the past 10 years" but that he "will need discovery from defendants in order to determine on how many occasions over the past 10 years defendants have engaged in RICO predicates."  Plaintiff's only specific RICO-related allegation is that Individual Defendants Kelly, Glabicki, and Jeffers "defrauded plaintiff out of $126.90, and also conspired to terminate and did terminate his insurance coverage and they are liable under RICO for their conduct in this regard."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

To state a civil claim for a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). Additionally, in order to have standing to pursue a civil RICO claim, a plaintiff "is required to show that the racketeering activity was both a but-for cause and a proximate cause of his injury." *Id.* (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). "Proximate causation for RICO purposes requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting *Holmes*, 503 U.S. at 268).

The most obvious infirmities here are the lack of either a RICO "enterprise" or a "pattern of racketeering activity."

### a.    *Plaintiff has not alleged the existence of an enterprise*

The members of the alleged RICO "enterprise" – all Defendants – are a parent corporation, its corporate subsidiaries, and officers and employees of the corporations.

Plaintiff's position is apparently that anytime a corporation is alleged to have engaged in fraudulent activity, a plaintiff has a viable RICO claim so long as that plaintiff can also allege that the corporation has officers and employees that, in *some* manner, participated in the fraudulent activity. That theory would ensnare almost every corporation facing a run-of-the-mill fraud claim in RICO litigation and is, unsurprisingly, not the law. *See, e.g., Cruz v. FX DirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) ("The requirement of distinctness cannot be evaded by alleging that a corporation has violated the [RICO] statute by conducting an enterprise that consists of itself plus all or some of its officers or employees."); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself"); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)                    Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

1357 (11th Cir. 2016) ("In contrast to an individual, a corporation cannot act except through its officers, agents, and employees.  Thus, a corporate defendant acting through its officers, agents, and employees is simply a corporation.  Labeling it as an enterprise as well would only amount to referring to the corporate 'person' by a different name.") (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)); *Cf. Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (no RICO liability for outside counsel where "he did not play any part in directing the affairs of the enterprise" and his "role was limited to providing legal services to the limited partnership and [corporation]," regardless of whether he rendered those legal services "poorly, properly or improperly").

Additionally, a parent corporation and its subsidiaries do not together constitute a RICO "enterprise," particularly where, as here, Plaintiff alleges that they are alter egos of one another.  While the Supreme Court and the Ninth Circuit have not addressed the specific question of whether a parent corporation and its subsidiaries might constitute an enterprise, other circuit courts have answered that question in the negative, and this Court finds the reasoning of those circuit courts persuasive.

For example, in *Discon, Inc. v. NYNEX Corp.*, the Second Circuit held that three separate corporate entities that "operate within a unified corporate structure" could not constitute a RICO enterprise where they "were acting within the scope of a single corporate structure, guided by a single corporate consciousness."  *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998); *see also Cruz*, 720 F.3d at 121 ("FXDD [a subsidiary] and Tradition [the parent company] are alleged to operate as part of a single, unified corporate structure and are, as such, not sufficiently distinct to demonstrate the existence of a RICO enterprise.").  In *Bessette v. Avco Financial Services, Inc.*, the First Circuit affirmed the district court's dismissal of a RICO claim and noted that "[i]n most cases, a subsidiary that is under the complete control of the parent company is nothing more than a division of the one entity.  Without further allegations, the mere identification of a subsidiary and a parent in a RICO claim fails the distinctiveness requirement."  *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 449 (1st Cir. 2000).  In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018

Title:      Stephen Yagman v. Natassia Kelly, et al.

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, the Seventh Circuit held that there was no enterprise liability where "[t]he claim [was] that the parent stole the software and gave it to the subsidiary to market." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 934 (7th Cir. 2003) (Posner, J.).  "A parent and its wholly owned subsidiaries no more have sufficient distinctness to trigger RICO liability than to trigger liability for conspiring in violation of the Sherman Act …, unless the enterprise's decision to operate through subsidiaries rather than divisions somehow facilitated its unlawful activity, which has not been shown here." *Id.*

Plaintiff has not plausibly pled the existence of a RICO enterprise.

### b.     *Plaintiff has not alleged a pattern of racketeering activity*

The RICO statute defines "pattern of racketeering activity" as "at least two acts of racketeering activity" that occur within ten years of one another.  18 U.S.C. § 1961(5).  The Supreme Court has held that this definition "does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237 (1989).

In order to establish a pattern, the racketeering activities must be related to one another, non-sporadic, and continuous.  "To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, ***continuing*** racketeering activity." *Id.* at 240 (emphasis in original).  "To satisfy the continuity requirement, Plaintiffs must prove either 'a series of related predicates extending over a substantial period of time [, i.e., closed-ended continuity],' …, or 'past conduct that by its nature projects into the future with a threat of repetition [, i.e., open-ended continuity].'" *Howard v. America Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) (quoting *H.J. Inc.*, 492 U.S. at 241-42) (alterations in original).

Plaintiff has alleged nothing more than an "inherently terminable" fraud against him that was fully accomplished in the approximately one month that elapsed between

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

"all defendants falsely and fraudulently communicat[ing] to Yagman" that they would
"continue his prescription medication coverage" if he would pay his past due
premiums by May 31, 2017 (in "April and May, 2017") and Yagman paying the
$126.90 required to make his account current and unspecified "defendants" denying
that he did (May 9, 2017).

       "Where 'the scheme alleged by Plaintiff was inherently terminable … there can
be no argument supporting any claim of open ended continuity.'"  *Rio Tinto PLC v.
Vale*, No. 14 Civ. 3042 (RMB) (AJP), 2015 WL 7769534, at *9 (S.D.N.Y. Nov. 20,
2015) (quoting *Watral v. Silvernails Farms, LLC*, 177 F. Supp. 2d 141, 151 (E.D.N.Y.
2002)), *aff'd sub nom. Watral v. Silvernails Farm LLC*, 51 Fed. Appx. 62 (2d Cir.
2002)).  Because Defendants' alleged scheme to separate Plaintiff from $126.90 in
premiums under the guise of continuing to provide him with Medicare Part D coverage
was "inherently terminable," and was in fact accomplished in just one month, there is
no plausible threat of repeated criminal conduct sufficient to establish an "open-ended"
RICO pattern.

       And the alleged scheme perpetrated against Plaintiff lasted just one month – not
nearly long enough to establish a "closed-ended" pattern.  *See Howard*, 208 F.3d at
750 ("'Predicate acts extending over a few weeks or months and threatening no future
criminal conduct do not satisfy [the closed-ended continuity] requirement.'" (quoting
*H.J. Inc.*, 492 U.S. at 242) (alterations in original); *Turner v. Cook*, 362 F.3d 1219,
1231 (9th Cir. 2004) (no closed-ended pattern where "almost all of the alleged
fraudulent communications occurred during the two month period between June and
July of 2001, and the additional three categories of communication occurred only
sporadically in the preceding year…"); *Rio Tinto*, 2015 WL 7769534, at *11
("Defendants' alleged RICO scheme lasted approximately two weeks (or, at most, 7
months) which does not constitute a 'substantial period of time' sufficient to satisfy
closed-ended continuity.").

       Plaintiff has failed to plausibly allege a "pattern of racketeering activity."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6022-MWF (PJWx)              Date:  March 20, 2018
Title:      Stephen Yagman v. Natassia Kelly, et al.

Plaintiff had the aid of Defendants' motion to dismiss his original Complaint, in which Defendants raised arguments that are identical to those raised in the Motion, yet failed to remedy the identified pleading deficiencies.  Accordingly, the Motion is **GRANTED** *without leave to amend* with respect to Plaintiff's RICO claim (Count 7) as against First Health.

## III.   CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** pursuant to Rule 12(b)(2) as to Aetna, Inc., Aetna Life, Coventry, and the Individual Defendants for lack of personal jurisdiction.  Accordingly, the action as to these Defendants is **DISMISSED** without prejudice.

The Motion is **GRANTED** *without leave to amend* as to First Health pursuant to Rule 12(b)(6).  Accordingly, the action as to First Health is **DISMISSED** with prejudice.

The Motion is **DENIED** *as moot* insofar as Defendants request that the Court strike various portions of the First Amended Complaint

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  The Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.  Local Rule 58-6.

IT IS SO ORDERED.